IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAITLIN M. GREY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 15-2479 |
| | : | |
| JONAS JOHANSSON, | : | |
| | : | |
| Defendant. | : | |

**Goldberg, J.**                                                                                              April 21, 2016

## MEMORANDUM OPINION

This case is one of several lawsuits between the parties stemming from an ongoing dispute regarding the true owner of a horse named "Navy."[1] Plaintiff, Caitlin M. Grey, has brought claims for fraud (Count I) and defamation (Count II) under Pennsylvania law against Defendant, Dr. Jonas Johansson.[2] In the case before me, Defendant has filed a motion to dismiss, and has requested sanctions. Plaintiff responded by filing a motion to strike Defendant's motion. For the reasons that follow, I will grant in part and deny in part Defendant's motion, and will deny Plaintiff's motion.

---

[1] On October 22, 2013, Johansson filed a Complaint in Replevin against Grey in the Court of Common Pleas, Chester County, Pennsylvania (Dkt. 2013-10369) to recover possession of Navy. On November 18, 2013, Grey filed a declaratory judgment action in the Superior Court of New Jersey, Chancery Division, Salem County (Dkt. SLM-C-15-13) seeking, *inter alia*, a ruling that Navy belonged to the Estate of Laura Brindle Johansson. On February 18, 2014, Grey filed a lawsuit against Johansson (and others) in the Court of Common Pleas, Chester County, Pennsylvania (Dkt. 2013-10012), raising various tort claims (including defamation) relating to Johansson's attempts to assert ownership to Navy. Grey filed her current complaint in the case before me on May 4, 2015.

[2] Although Plaintiff's Amended Complaint does not specify that her claims are based on Pennsylvania law, I will apply Pennsylvania law to this case. Plaintiff alleges that the unlawful events giving rise to this litigation occurred in Pennsylvania, and she is a Pennsylvania citizen. (Am. Compl. ¶¶ 1, 3–4.) In cases involving defamation claims, the "majority of courts [conclude] that the plaintiff's domicile should control since this is the forum with the greater interest." Mzamane v. Winfrey, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010). Additionally, Defendant relies on Pennsylvania law in his motion to dismiss. (Def.'s Mot. to Dismiss 14–15, 26.) See e.g., Sciolla v. W. Bend Mut. Ins. Co., 987 F. Supp. 2d 594, 598-99 (E.D. Pa. 2013) ("The parties rely on Pennsylvania law in their written submissions to the Court, which indicates their agreement that Pennsylvania law governs.").

I.     **FACTUAL AND PROCEDURAL HISTORY**[3]

Defendant (Johansson) was married to Laura Brindle Johansson (Laura), who died testate on February 9, 2009. Johansson was named Executor of Laura's Estate. Plaintiff (Grey) was Laura's attorney, and drafted her will. Laura owned nine (9) horses at the time of her death, including Navy. Laura's will directed Grey, acting as Laura's attorney, to "sell or adopt out or otherwise dispose of [Laura's horses] at [Grey's] sole discretion." This provision was included under the "Personal Possessions" section of the will. (Am. Compl. ¶¶ 6–14; Ex. A, p. 1.)

Grey and Johansson apparently worked together without issue to find homes for several of the horses. With respect to Navy, Grey alleges that on March 10, 2009, she had Navy transported, with Johansson's permission, from Johansson's home in New Jersey to a stable in Nottingham, Pennsylvania. (Am. Compl. ¶ 18.) Grey alleges that she wanted to ensure Navy was properly cared for, and to "see to his best interests" thereby complying with Laura's "very specific wishes, intentions and instructions." (Id. at ¶ 19.)

In July 2009, a third party offered to purchase Navy. Johansson wrote to Grey indicating that he wanted to "move forward" with the sale. Grey responded by stating that she opposed the sale, and urged Johansson not to go through with it. Johansson therefore declined the offer. (Id. at ¶¶ 22, 27; Ex. C., pp. 8–9.)

Grey alleges that from roughly August 2009 until October 2013, Johansson made no further attempts to coordinate the sale of Navy. (Id. at ¶¶ 40, 43.) This, Grey alleges, demonstrates that Johansson "abandoned Navy to [Grey's] care, custody, control, supervision, management and sole discretion … exactly as Laura's Will directed." (Id. at ¶ 43.)

---

[3] The following facts are derived from Plaintiff's Amended Complaint and the exhibits attached thereto, unless otherwise noted.

On October 22, 2013, after learning from a third party that Grey had stabled Navy at a new location, Johansson filed a Complaint in Replevin in the Court of Common Pleas, Chester County, Pennsylvania (Dkt. 2013-10369), seeking to recover possession of Navy. (Am. Compl. ¶¶ 47–48; Ex. D.) Johansson claimed that Navy was purchased with marital assets, and was thus jointly owned by both he and Laura. He argued that because Navy was jointly owned, legal title to the horse passed to him upon Laura's death (i.e., Navy was not part of Laura's personal Estate). (Am. Compl. ¶ 48; Ex. E.) Johansson further alleged that Grey concealed Navy's whereabouts, and engaged in a three-year scheme to hide Navy from his rightful owner, thus violating "numerous state and federal criminal statutes." (Ex. F. ¶¶ 22–23.)

Johansson simultaneously filed an "Emergency Ex-Parte Petition for Injunctive Relief," and sought to enjoin Grey from removing Navy from Chester County, Pennsylvania, and further requested that Grey be required to disclose Navy's whereabouts. (Id.) The state court ultimately ruled in favor of Johansson, concluding that Navy was either marital property, in which case Johansson was entitled to his possession, or, alternatively, even if Navy was not marital property, Johansson still maintained the right to possession as Executor of Laura's Estate. (Def.'s Mot. to Dismiss, Ex. B, pp. 130–31.)[4] Johansson was therefore granted temporary custody and possession of Navy pursuant to a Writ of Replevin in November 2013. (Am. Compl. ¶ 57.)

Also in November 2013, shortly after the writ was issued, Grey filed a declaratory judgment action in the Superior Court of New Jersey, Chancery Division, Salem Vicinage (Dkt. SLM-C-15-13), alleging that Navy was part of Laura's personal Estate, and further claiming that

---

[4] This fact is derived from the transcript of the proceedings before the Court of Common Pleas, Chester County, which was attached as "Exhibit B" to Johansson's motion to dismiss. This document is a matter of public record. See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."). Moreover, Grey attached to her Amended Complaint court documents from the state action (Am. Compl. Ex. D, E, F), and incorporates by reference the rulings of the state court in formulating her allegations in the case before me. (Am. Compl. ¶ 57.) See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, [courts] may consider documents that are attached to or submitted with the complaint … and any matters incorporated by reference[.]") (internal citations omitted).

the New Jersey courts were the only authorized tribunals to interpret and construe Laura's will, which was admitted to probate in New Jersey. (Am. Compl. ¶ 58.) Approximately three months later, in February 2014, Grey filed a second lawsuit against Johansson (among others) in the Court of Common Pleas, Chester County, Pennsylvania (Dkt. 2013-10012), raising various tort claims stemming from this ongoing dispute. (Def.'s Ex. N, P.)

In the case before me, Grey's defamation claim is based on Johansson's alleged statements that Grey was a "horse thief" who stole Navy from Johansson's stable premises in March 2009, kept Navy's whereabouts a secret, and refused to return him to his rightful owner. (Am. Compl. ¶ 98.) Grey asserts that Johansson made these statements "[b]eginning on October 13, 2013." (Id. at ¶ 97.) Regarding the source of these statements, Grey alleges that Johansson made them either in pleadings or during his testimony taken under oath in the now-concluded replevin action in Chester County. (Id. at ¶¶ 46, 53, 75.)

Grey's fraud claim is based on her prior dealings with Johansson following Laura's death, and Johansson's alleged misrepresentation in March 2009 that Navy belonged to Laura's Estate, rather than to Johansson individually as Laura's surviving spouse. (Id. at ¶¶ 30, 60–61, 66–71, 84, 88.) Grey claims that legal title to Navy was a material fact upon which she detrimentally relied because she would not have taken possession of Navy, and cared for him, had she known that legal title to the horse was not vested in Laura's Estate. (Id. at ¶¶ 61, 70.) Grey does not expressly state that she is Navy's true owner, but rather alleges that Navy belonged to Laura's Estate, and she operated under that belief in caring for him between 2009 and 2013. Grey ultimately alleges a "well-planned scheme" and "con job" by Johansson to deceive her into caring for Navy for more than four years, thus forcing her to become a "compulsory and involuntary bailee" for Johansson's property, with no compensation for Grey's time, effort, expenditure, or expertise in caring for Navy. (Id. at ¶¶ 73–74, 76.)

4

Johansson has filed a single motion to dismiss and for sanctions, arguing that Grey has failed to state claims upon which relief can be granted, and that sanctions are appropriate because Grey's claims are frivolous given the long history of litigation that has already transpired between the parties. (Def.'s Mot. to Dismiss 1.) Grey elected not to file a response to Johansson's motion, but rather filed a motion to strike Johansson's motion, arguing that it exceeds the page limit outlined in this Court's Policies and Procedures, and further arguing that imposing sanctions is impermissible because Johansson did not comply with the requirements of Federal Rule of Civil Procedure 11, which states that a motion for sanctions must be "made separately from any other motion." Fed. R. Civ. P. 11(c)(2).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. While plausibility "does not impose a probability requirement at the pleading stage," it does require "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim. Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

In evaluating a motion to dismiss, courts generally consider only the allegations contained in the complaint, the exhibits attached thereto, matters of public record, and any "undisputedly authentic document" that a defendant attaches as an exhibit, so long as the plaintiff's claims are based on that document. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); see also Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Matters of public record include previous court opinions and proceedings from related cases. See e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 413 (3d Cir. 1999); Hynoski v. Columbia Cty. Redevelopment Auth., 941 F. Supp. 2d 547, 555-56 (M.D. Pa. 2013).[5]

Additionally, the so-called "Third Circuit Rule" allows affirmative defenses to be argued in a motion to dismiss, rather than an answer, but only if it is apparent on the face of the complaint that a particular claim is barred. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). This rule applies to a statute of limitations defense, as well as res judicata. Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

### III. ANALYSIS

A. Defendant's Motion to Dismiss Plaintiff's Defamation Claim

In Pennsylvania, defamation is "the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. 2008). The elements of defamation in

---

[5] "Taking judicial notice of these documents does not mean that the court accepts as true all the contentions and allegations of the parties contained therein. Rather, the court notices the fact of their filing and the rulings issued by the court of record." Hynoski, 941 F. Supp. 2d at 556; see also U.S. ex rel. Spay v. CVS Caremark Corp., 913 F. Supp. 2d 125, 140-41 (E.D. Pa. 2012) ("Such notice serves only to indicate what was in the public realm at the time, not whether the contents of those documents are true.").

6

Pennsylvania are defined by statute. A plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) any abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a); Mzamane v. Winfrey, 693 F. Supp. 2d 442, 476-77 (E.D. Pa. 2010).

Grey alleges that Johansson defamed her "[b]eginning on October 13, 2013" by making "false statements … to third parties" that Grey was a "horse thief" who stole Navy from Johansson's property in 2009. (Am. Compl. ¶¶ 97–98.) Grey claims that Johansson made these statements either in pleadings or during his testimony taken under oath in prior state-court proceedings. (Id. at ¶¶ 46, 53, 75.)

Johansson first argues that Grey's defamation claim is barred by res judicata because Grey could have asserted both of her claims in the now-concluded replevin action to recover Navy.[6] (Def.'s Mot. to Dismiss 14.) The Superior Court of Pennsylvania has held that replevin actions are "strictly limited to title and right of possession; all matters foreign to those limited issues are expressly excluded from consideration and are not available as defenses or counterclaims." Ford Motor Credit Co. v. Caiazzo, 564 A.2d 931, 933 (Pa. Super. 1989). A counterclaim must therefore be "asserted in an independent proceeding." Id. at 934. Accordingly, I disagree with Johansson that Grey's claims could have been asserted as counterclaims in the replevin action.

Johansson also argues that Grey's defamation claim is barred by the statute of limitations. In Pennsylvania, the statute of limitations for libel and slander (collectively defamation) is one

---

[6] Plaintiff cites to the replevin action in her Amended Complaint, but describes it as "Johansson's Wrongful Initiation of Legal Proceedings Against Plaintiff." (Am. Compl. ¶¶ 44–57, Sec. B.)

year. 42 Pa. Cons. Stat. Ann. § 5523(1). Grey alleges that Johansson defamed her "[b]eginning on October 13, 2013," which means that the statute of limitations for any statements made on that date would have expired on October 13, 2014—almost seven (7) months before Grey filed her original complaint in the case before me on May 4, 2015.[7] While it is true that Grey phrases this allegation as only the beginning of Johansson's allegedly defamatory statements, she has not advanced any factual allegations which indicate that Johansson made defamatory statements beyond the May 4, 2014 deadline.[8] Therefore, Grey has failed to plausibly state a claim for defamation because those allegations contained in her amended complaint are barred by the statute of limitations.

Johansson further argues that Grey's defamation claim is barred by the litigation privilege because she only complains about statements made in court documents. (Def.'s Mot. to Dismiss 26–27.) "Pennsylvania, like many other jurisdictions, recognizes a judicial [litigation] privilege providing immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought." Schanne v. Addis, 121 A.3d 942, 947 (Pa. 2015). The privilege covers statements made by parties, witnesses, attorneys, or judges. Id. "[T]he privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." Id. at 947 (citing Bochetto v. Gibson, 860

---

[7] I calculate the one-year limitations period backward from the filing of Grey's initial Complaint (Doc. No. 1) on May 4, 2015. Jones v. United States, 366 F. App'x 436, 440 (3d Cir. 2010). However, for all other purposes, the Amended Complaint filed on June 1, 2015 (Doc. No. 3), controls. See W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank, 712 F.3d 165, 171 (3d Cir. 2013) (noting that an amended complaint "supersedes the original [complaint] and renders it of no legal effect").

[8] I further note that Grey sued Johansson in Pennsylvania state court for defamation on February 18, 2014— approximately four (4) months after the alleged defamatory statements began in the case before me. (See Def.'s Mot. to Dismiss, Ex. N, P.) Grey alleged in her state-court case that Johansson defamed her "before October 11, 2013" by accusing her of "horse theft." (Def.'s Mot. to Dismiss, Ex. N, p. 40 ¶ 364.) The court subsequently dismissed Grey's defamation claim with prejudice because it was barred by the one-year statute of limitations. (Def.'s Mot. to Dismiss, Ex. P.) As such, not only are Grey's allegations "beginning on October 13, 2013" barred by the statute of limitations, but any defamation allegation(s) occurring before February 18, 2014 would also be barred by res judicata because the doctrine applies not only to related claims that were actually raised and litigated in a previously adjudicated action, but also to claims that "could have been raised" in the previous action. Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co., 902 A.2d 366, 376 (Pa. 2006).

A.2d 67, 71 (Pa. 2004)). The judicial privilege is not limited to statements made in open court, but encompasses pleadings as well. Post v. Mendel, 507 A.2d 351, 353 (Pa. 1986); see also Stein v. City of Philadelphia, 2013 WL 6408384, at *6 (E.D. Pa. Dec. 5, 2013) ("Parties in litigation are given an absolute privilege with regard to statements that relate to a judicial proceeding if the communications are preliminary to, instituting, or part of the proceeding.").

In reviewing Grey's amended complaint, I also agree with Johansson that Grey has not included any factual allegations pertaining to alleged defamatory statements made outside of court proceedings. Grey's lone alleged defamatory reference is that Johansson communicated to third parties that Grey was a "horse thief." (Am. Compl. ¶¶ 97–98.) In support of this assertion, she cites to statements that Johansson made either in pleadings, legal documents, or under oath in the previously adjudicated replevin action. (Id. at ¶¶ 46, 53, 75.) Grey's amended complaint expressly acknowledges (several times) that these statements were made in court documents, or during the course of the litigation. (Id. at ¶ 75 ("Defendant [Johansson] sued Plaintiff [Grey], falsely accusing [her] of being a horse thief who … had earlier stolen his horse")). Grey goes on to allege that during "testimony taken under oath," Johansson agreed that Grey was a "horse thief." (Id. at ¶ 46.) Courts have previously concluded that "[t]aking a deposition … [is] part of the regular course of proceedings," and therefore, covered by the privilege. Schatzberg v. State Farm Mut. Auto. Ins. Co., 877 F. Supp. 2d 232, 247 (E.D. Pa. 2012).

Moreover, when Johansson filed his Emergency Ex Parte Petition for Injunctive Relief in the replevin action, he claimed that Grey had "secreted the horse," "perpetuated a fraud by representing to others that she either own[ed] the horse or [was] in lawful possession of him," and that Grey's actions "violate[d] numerous state and federal criminal statutes, including theft." (Am. Compl. ¶ 53.) This Petition clearly constituted a court document and was part of the ongoing replevin action proceedings in state court. The timing of the alleged defamatory

9

statements in the case before me (i.e., beginning in October 2013) also corresponds to when Johansson initiated the replevin action against Grey to recover possession of Navy.

Additionally, I conclude that Johansson's alleged defamatory statements satisfy the materiality requirement of the litigation privilege because they were pertinent to the relief sought in the replevin action and the accompanying petition for injunctive relief (i.e., Johansson claimed that he was prevented from exercising his legal right to possession of Navy because Grey had secreted the horse's whereabouts). See Pawlowski v. Smorto, 588 A.2d 36, 41–42 (Pa. Super. 1991) (stating that whether a particular statement is absolutely privileged is a question of law for the court to decide).[9]

Even accepting Grey's allegations as true, and construing them in the light most favorable to her, as I am required to do, she has failed to plead facts that plausibly give rise to a claim of defamation occurring after May 4, 2014, and falling outside the judicial privilege. Accordingly, Grey's defamation claim will be dismissed.

    B.  <u>Defendant's Motion to Dismiss Plaintiff's Fraud Claim</u>

Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead "with particularity the circumstances constituting fraud." Iqbal, 556 U.S. at 686. To satisfy this heightened pleading standard, a plaintiff must plead or allege the date, time, and place of the alleged fraud, or otherwise "inject precision or some measure of substantiation" into her allegations. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

The elements of common law fraud in Pennsylvania are: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5)

---

[9] Grey did not respond to Johansson's motion to dismiss. Nevertheless, even after reviewing all of the factual allegations contained in Grey's amended complaint in her favor, and assuming their veracity, Grey has given no indication that Johansson's "horse thief" accusations in the replevin action were not germane to that case.

justifiable reliance on the misrepresentation; and, (6) a resulting injury proximately caused by the reliance. Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. 2010).

In the case before me, Grey generally alleges that: Johansson "knowingly and falsely misrepresented [to Grey] the material fact that legal title to Navy vested in the Estate of Laura … upon [her] death;" Johansson intended for Grey to rely on this alleged misrepresentation; Grey did in fact detrimentally rely on this misrepresentation and was forced to become a "compulsory and involuntary bailee" for Navy; and, this reliance "proximately caused injury to [Grey]" by defrauding her of money, services, time, and expenditure of her expertise without compensation. (Am. Compl. ¶¶ 67–76, 83–95.) In other words, Grey essentially claims that she cared for Navy only after being misled by Jonas Johansson into thinking that Navy belonged to Laura's Estate.

Johansson argues that Grey was under no obligation to retain Navy, and thus, could not have experienced any damages (injury) as a result of Johansson's alleged misconduct. (Def.'s Mot. to Dismiss 23.) Johansson further emphasizes (and Grey's own exhibits corroborate) that it was Grey—acting as Laura's attorney—who drafted Laura's will. In other words, Johansson argues that Grey, a licensed attorney responsible for drafting the document at the center of this ongoing dispute, now claims that she was intentionally misled by Johansson, a lay person, into believing that Navy was owned by Laura's Estate under the will.

I agree with Johansson that Grey cannot plausibly make out a claim for common law fraud where her primary allegation is that she justifiably relied on a lay person's interpretation of New Jersey law, particularly in light of the fact that Grey admits to drafting Laura's will in her capacity as Laura's attorney. I need not endeavor to ascertain whether Navy was marital property, and thus belongs to Johansson individually, or, whether Navy was Laura's personal property, and thus belonged to her Estate upon her death. The New Jersey state-court system is

the appropriate forum for that dispute, and Grey's declaratory judgment action before the New Jersey Superior Court ought to provide her with an answer to that question.

My conclusion relies on the notion that Pennsylvania courts recognize that a lay person is untrained in the law, and lacks the legal skill and expertise of a licensed attorney. See Westmoreland Cty. v. RTA Grp., Inc., 767 A.2d 1144, 1150 (Pa. Commw. Ct. 2001) ("[A]n attorney applies legal knowledge … [when she] prepares for clients documents requiring familiarity with legal principles beyond the ken of the ordinary layman—for example, wills[.]") (quoting Shortz v. Farrell, 327 Pa. 81, 84 (1937)); Harkness v. Unemployment Comp. Bd. of Review, 920 A.2d 162, 167 (Pa. 2007); see also In re Campanella, 207 B.R. 435, 444-45 (Bankr. E.D. Pa. 1997) ("[P]reparation of … legal papers and giving of advice in legal matters … require[s] a familiarity with legal principles which are beyond a layperson's knowledge.").[10] Thus, to the extent Grey claims that Johansson intentionally made a material misrepresentation regarding legal title to Navy, it would be unjustifiable—in light of the fact that Grey prepared the very document meant to address that issue—for Grey to rely on Johansson's assessment.

It is similarly implausible, based on Grey's own allegations and the exhibits attached to her amended complaint, that she was forced to become a "compulsory and involuntary bailee" for Navy as a result of Johansson's alleged misrepresentation.[11] Grey's amended complaint acknowledges that Johansson wished to "move forward" in selling Navy to a third party in July 2009, approximately five months after Laura passed away. (Am. Compl. ¶¶ 22–23.) Grey attached as an exhibit a letter she wrote to Johansson on August 14, 2009, in which *she* objected

---

[10] New Jersey courts have similarly recognized that drafting a will for another person requires legal knowledge and skill beyond that of a lay person. See e.g., Matter of Margow's Estate, 390 A.2d 591, 597 (N.J. 1978); State v. Rogers, 705 A.2d 397, 401 (N.J. Super. 1998) (citing In re Baker, 85 A.2d 505, 514 (N.J. 1951)).

[11] Despite this allegation, Grey states elsewhere that Johansson "abandoned Navy to [Grey's] care, custody, control, supervision, management and sole discretion … exactly as Laura's Will directed." (Am. Compl. ¶ 43.)

to the proposed sale, and implored Johansson not to go through with it.[12] (Am. Compl., Ex. C., pp. 8–9.) Plaintiff indicated that she would "continue to support" Navy because she received the "personal pleasure of seeing the horse properly stabled." Id. In other words, Grey's own factual allegations completely undermine her fraud claim (i.e., that she was somehow tricked into becoming the horse's caretaker). Accordingly, Grey's fraud claim will be dismissed because she has failed to plead facts or circumstances that plausibly give rise to a claim for fraud.

   C.  Defendant's Motion for Sanctions

I turn next to Johansson's request for sanctions. Federal Rule of Civil Procedure 11(c)(2) requires that a motion for sanctions be made separately from any other motion, and must not be presented to the Court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days." Fed. R. Civ. P. 11(c)(2). Johansson filed a single motion, which not only requests dismissal of Grey's claims, but also seeks Rule 11 sanctions. Because Johansson did not file a separate motion for sanctions, that request will be denied. Additionally, Johansson failed to notify Grey of his intent to pursue sanctions, as required by Rule 11's safe harbor provision. Finally, putting these procedural deficiencies aside, I doubt that Grey's conduct before this Court rises to the level of bad faith.

   D.  Plaintiff's Motion to Strike

Lastly, I turn Grey's motion to strike. Grey was correct to point out that Johansson's brief exceeds the page limit of twenty-five (25) pages set forth in this Court's Policies and Procedures. (Pl.'s Mot. to Strike 2–3, 8–9.) However, five (5) out of the first six (6) pages of Johansson's brief included a Table of Contents and Table of Citations. (See Def. Mot. to Dismiss 2–6.) I only considered Johansson's arguments up through page twenty-seven (27). I did not consider or rely

---

[12] Grey acknowledges that Johansson ultimately followed Grey's recommendation in not going through with the sale. (See Am. Compl. ¶ 27 ("Johansson followed Plaintiff's recommendations and advice in all matters with respect to [Navy], turning [the third party offeror] away and leaving Navy in Plaintiff's care.").)

on any arguments from pages twenty-eight (28) through forty (40). Therefore, I will deny Grey's motion to strike insofar as it seeks to strike Johansson's motion for failure to adhere to the page limit set forth in this Court's Policies and Procedures.[13]

## IV. CONCLUSION

Defendant's motion to dismiss and for sanctions will be granted in part and denied in part. The motion will be granted such that Plaintiff's claims for fraud (Count I) and defamation (Count II) will be dismissed. The motion will be denied insofar as it seeks to impose sanctions. Plaintiff's motion to strike will be denied.

An appropriate order follows.[14]

---

[13] Because I will deny Johansson's motion insofar as it seeks to impose sanctions, I will deny the remainder of Grey's motion to strike as moot.

[14] "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). I conclude that amendment would be both inequitable and futile. Grey has given no indication that amending her complaint a second time will allow her to plausibly state claims for fraud or defamation. Moreover, this is the fourth lawsuit between the parties, all of which pertain in some way to the facts recited *supra*. To the extent Grey is entitled to relief under Laura's will, which requires construction of New Jersey law, or under a quantum meruit theory for reimbursement of the funds paid for Navy's care, the New Jersey state-court system is the appropriate forum for resolution of those claims.